ARTHUR DUHIG v. THE STATE.

No. 3806.   Decided November 17, 1915.

1.—Manslaughter—Evidence—General Reputation—Suspension of Sentence.

Where, upon trial of murder and a conviction of manslaughter, defendant put in issue his reputation as a moral man, there was no error in permitting

the State, on cross-examination of the witnesses, to ask them if in forming their opinion .of defendant's general reputation, they had taken into consideration the fact that defendant was charged with being the father of an illegitimate child, to which some of them answered that they had not heard the report, and others said they did, nor was the court's failure to instruct the jury not to consider this evidence reversible error, as defendant had filed an application for a suspension of sentence.

**2.—Same—Charge of Court—Apparent Danger—Self-defense.**

Where, upon trial of murder and a conviction of manslaughter, the court, in his charge on self-defense, instructed the jury that if defendant believed that deceased was preparing to make an attack on him, he had a right to slay the deceased, defendant's contention that the court's charge was not full and complete on the subject of apparent danger .was untenable.

**3.—Same—Charge of Court—Sanctity of Home.**

Where, upon trial of murder and a conviction of manslaughter, the record on appeal showed that appellant's wife was not only not present at the time of the shooting, but had not lived with him for some time, nor was defendant on his premises at the time of the shooting, there was no error in the court's refusal to charge the jury that under the laws of this State, a person has the right to protect the sanctity of his home from an intruder.

**4.—Same—Threats—Charge of Court.**

Where, upon trial of murder and a conviction of manslaughter, there was no evidence of threats by the deceased, there was no error in the court's failure to charge thereon.

**5.—Same—Newly Discovered Evidence—Affidavits.**

In the absence of affidavits, the question of newly discovered evidence can not be reviewed on appeal.

Appeal from the District Court of Bexar. Tried below before the Hon. W. S. Anderson.

Appeal from a conviction of manslaughter; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*T. M. West,* for appellant.

*C. C. McDonald,* Assistant Attorney General, for the State.

HARPER, JUDGE.—Appellant prosecutes this appeal from a conviction adjudging him guilty of manslaughter.

In defendant's bills of exceptions Nos. 7, 8, 9 and 10 it is shown that when defendant's witnesses, Ben S. Fisk, Jack W. Neal, Wm. Hoefgen, and L. Kaufman, were on the witness stand, on cross-examination, they were asked if in forming the opinion of defendant's general reputation they had taken into consideration the report that an illegitimate child had been born to a Mexican woman on South Flores Street on or about December 14, 1914, and that such report had been published in the newspapers, and the defendant was charged with being the father of the child; and that if they had heard the report about defendant being the father of an illegitimate child by a Mexican woman

who lived with defendant in the back of Dean's store or in a corral, and that she went by the name of Mrs. Arturo Duing, and had heard that this Mexican woman received mail while living there addressed to Mrs. Arturo Duing. The record discloses, and the court in his qualification shows, that before he allowed such questions to be propounded to the witnesses, the defendant had put in issue his reputation as a moral man, and on direct examination the witnesses named had testified that they knew his general reputation as a moral man and that it was good. After the witnesses had thus testified, the State was allowed to ask the witnesses if they had heard these reports, and if they took these reports into consideration in arriving at his general reputation as a moral man. A portion of them answered they had heard the reports, and a portion said they had not heard it. As appellant had put his reputation as a moral man in issue, and attempted to prove it was good by these witnesses, the cross-examination was permissible, and the court did not err in so holding.

Appellant when testifying as a witness had admitted that he knew the reports were in circulation, and that the Mexican woman had reported to the authorities he was the father of the child, and he had taken no steps to have the report corrected, but he testified the report was untrue. Neither did the court err in refusing to instruct the jury not to consider this evidence, as appellant had filed an application asking for a suspension of sentence, and in addition to putting his reputation as a peaceable, law-abiding citizen in issue, by direct questions to his witnesses had placed in issue his reputation as a moral man.

Appellant excepted to the court's charge because the charge on apparent danger was not full and complete, and excepted to the charge because the court had failed to charge on real danger. The State's case is that appellant and deceased met in the yard of Josephine Cavallo; that appellant approached deceased and they engaged in a conversation, Josephine Cavallo not understanding what was said. She says that after talking a while deceased started to climb the fence, when appellant drew a pistol and began to shoot; that deceased got over the fence and ran, when appellant pursued him and shot again, then threw the pistol away. S. T. Chaves testifies that deceased came running into the saloon of John Dolan, appellant running after him; that appellant struck deceased and knocked him down and got on him and struck deceased again. Witness then stopped the fight, deceased dying where he lay.

Appellant and James McIntosh testified that appellant was sitting on a bench in his yard, when deceased came into the yard of Josephine Cavallo. That appellant approached deceased, showing him a letter, and asked him if he had written it. That deceased at first did not reply, but upon the question being again asked, said, "Yes, and several more like it." And as he made this reply he dropped a bundle he had in his arms and put his hand in his pocket, when appellant drew his pistol and fired four times in rapid succession, and as deceased turned to run appellant fired the fifth time, and after doing so threw the

pistol at deceased. Appellant admits pursuing deceased in the saloon and striking him after getting in the saloon. The letter appellant says deceased admitted writing was introduced in evidence, but is not included in the record before us, the record stating: "A letter which has been lost or destroyed, but which was dated April 20, 1912, addressed to Mrs. Arthur Duhig, containing a number of endearing terms and references to meetings between the writer and the woman to whom it was addressed, and the narrow escapes from discovery by the husband, and signed 'Your second husband F.'"

The attending physician testified that all five shots struck deceased. One in the throat, another just below that one, two in the arm, and one three inches below the right shoulder blade. That these wounds caused the death. Among other things in his charge, the court instructed the jury:

"A reasonable apprehension of death or great bodily harm will excuse a party in using all necessary force to protect his life or person, and it is not necessary that there should be actual danger, provided he acted upon a reasonable apprehension of danger as it appeared to him from his standpoint at the time, and in such case the party acting under such apparent danger is in no event bound to retreat in order to avoid the necessity of killing his assailant.

"If from the evidence you believe the defendant killed the said Frank Lawler, but further believe that at the time of so doing the deceased was preparing to make an attack on him, which, from the manner and character of it caused him to have a reasonable expectation or fear of death or serious bodily injury and that acting under such reasonable expectation or fear, the defendant killed the deceased, then you should acquit him."

This was aptly stating the law applicable to the evidence. The defendant's testimony was that when he asked deceased if he wrote the letter, he said, "Yes, and many others," dropping his bundle and running his hand in his pocket. The court instructed the jury if appellant believed that deceased was preparing to make an attack on him he had a right to slay deceased. The exceptions to the charge above noted present no error, and they were the only exceptions reserved to the charge as given.

The appellant requested the court to instruct the jury that under the laws of this State a person has the right to protect the sanctity of his home from an intruder, and that he may exercise all his powers to defend the sanctity of his home. It is only when one catches another in the act of adultery with his wife that he is justified in slaying his adversary. As this record discloses that appellant's wife was not only not present at the time of the shooting, but had not lived with him for some time, the court correctly refused the instruction requested. Neither were they on appellant's premises when the shooting occurred.

As there were no threats testified to by anyone, communicated or uncommunicated, the court correctly refused to charge the jury the law as applicable to such state of case.

As the court presented the law of self-defense as applicable to the evidence in this case, there was no error in refusing the special charges requested on that issue.

The bill of exceptions complaining of the failure of the court to grant him a new trial on account of newly discovered evidence can not be reviewed. The alleged affidavits of Clara Ford, T. M. West, W. H. Russell, Ysabel Barrientes, and Felix Barrientes are not included in the bill, nor are they attached to the motion for a new trial. The affidavits (if any such were filed) do not appear at all in the transcript before us. Without knowing what is contained in the affidavits it is impossible for us to determine whether or not such evidence would be material to any issue in the case, or whether or not it would come within the rules governing newly discovered evidence.

The judgment is affirmed.

*Affirmed.*